UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
                                                                                            :

SECURITIES AND EXCHANGE COMMISSION,     :

                                    Plaintiff,                             :

          - against -                            :     18-cv-04930(VEC)

BENJAMIN ALDERSON and                       :
BRADLEY HAMILTON,                               :

                                Defendants.                     :
------------------------------------------------------------------------x

## MONTHLY REPORT ON THE STATUS OF DISCOVERY

The parties submit this Monthly Report on the Status of Discovery pursuant to the Court's Order dated August 2, 2019. The parties report as follows:

1.     The parties served Initial Disclosures pursuant to Fed. R. Civ. P. 26(a)(1)(A) on August 8, 2018.

2.     Plaintiff Securities and Exchange Commission (the "Commission") served the following discovery requests on August 31, 2018:

     (a) Plaintiff Securities and Exchange Commission's Request for Production of Documents and Electronically Stored Information to Benjamin Alderson;

     (b) Plaintiff Securities and Exchange Commission's Request for Production of Documents and Electronically stored Information to Bradley Hamilton;

(c) Plaintiff Securities and Exchange Commission's First Set of Interrogatories to Benjamin Alderson; and

(d) Plaintiff Securities and Exchange Commission's First Set of Interrogatories to Bradley Hamilton.

3. Defendant Benjamin Alderson ("Alderson") served his First Set of Document Requests to Plaintiff on August 31, 2018.

4. Defendant Bradley Hamilton ("Hamilton") served his First Set of Document Requests to Plaintiff on August 31, 2018.

5. The parties responded to the above discovery requests on October 1, 2018.

6. On October 1, 2018, in response to Defendants' discovery requests, the Commission produced over 36,000 non-privileged documents, in electronic, text-searchable format; an index to the production listing the documents by producing party and Bates range; and a log of documents withheld as privileged and/or protected from disclosure. On November 6, 2018, the Commission produced an additional 116 documents responsive to the Defendants' discovery requests, an index; and an updated privilege log. This concluded the Commission's production of documents responsive to the Defendants' discovery requests except as to documents received on an ongoing basis from third parties during fact discovery, and except for items subject to objections upon which Defendants reserved their rights.

7. On October 25, 2018, Alderson produced LinkedIn messages responsive to the Commission's document requests. On November 27, 2018, Hamilton produced LinkedIn messages responsive to the Commission's document requests. On February 11, 2019, Alderson produced 586 documents, consisting of e-mails and attachments, responsive to the Commission's document requests.  On April 11, 2019 Alderson produced 2,375 documents, consisting of e-

mails and attachments, responsive to the Commission's document requests. On August 26, 2019 Alderson produced 3,676 additional documents which were initially withheld for further privilege review. The Commission's Central Processing Unit was unable to open the zip file and on September 10, 2019, Alderson provided a new copy of the production. All documents responsive to the Commission's document requests have been provided except for bank statements for accounts into which Alderson deposited compensation received from deVere USA, Inc. ("DVU"), deVere Group Ltd. ("DVG") or Nigel Green, as described below. Alderson is cross checking the remaining documents which appear potentially privileged to determine if DVU has invoked privilege.

8. Defendant Alderson's counsel previously advised the Commission they are in possession of certain of Alderson's DVU emails and related documents, responsive to the Commission's document requests, which Defendant Alderson believes are exculpatory, or consistent with his position in this matter, and that DVU may have not produced to the Commission during its investigation. Counsel for DVU, at the Carlton Fields law firm, has objected to the production of such materials, claiming that Alderson should not be in possession of them. However, counsel for DVU at Carlton Fields have refused to articulate a basis for their objections to Alderson's production of such materials, explain why DVU did not produce these documents during the investigation, or take any affirmative action regarding Alderson's possession or production of these documents. Alderson's counsel previously advised Carlton Fields that they intended to make a production forthwith, inviting DVU to make a motion or otherwise seek judicial relief by November 30, 2018. No such motion was made, and Defendant Alderson made his initial production and continues to make supplemental productions as appropriate.

9.      Defendant Alderson produced a 2011 Carlton Field's tax opinion letter addressing the tax consequences of QROPS, which Defendants believe goes directly to a key issue in this case and is exculpatory to Defendants. Defendants opposed DVU's Letter Brief in Support of Maintaining Privilege over Tax Opinions and the Court issued its decision dated June 10, 2019 on the privilege and work product issues and found that both the December 2, 2011 and April 15, 2013 Carlton Field tax opinion letters were not protected by the attorney-client privilege or as attorney work product and ordered their production. DVU produced the tax opinion letters on June 12, 2019. The Commission has reviewed the letters and does not agree that this evidence is exculpatory.

10.     Defendant Hamilton's counsel has advised the Commission that DVU has also objected to production of its e-mails generated or received during his tenure at DVU. Defendant Hamilton has disputed DVU's objections. In any event, Defendant Hamilton and his technical expert have been unable to open or download any such e-mails, and his technical expert has confirmed that they cannot be recovered. The Commission takes no position as to whether (1) Defendants are properly or improperly in possession of the DVU documents or (2) Alderson's characterization of his dispute with DVU and its counsel is accurate, but the Commission has not withdrawn its discovery requests and understands that Alderson has largely completed his production of responsive documents to the Commission, with exceptions. First, Alderson is withholding approximately 90 documents which he believes DVU has invoked privilege as to or that otherwise appear plainly privileged. DVU produced documents in connection with an October 7, 2019 letter to the parties. Martin Byrne's deposition testimony which Defendants believe directly impacted the scope of the privilege waiver occurred on October 30, 2019. Once the scope of DVU's privilege waiver is agreed upon or determined by the Court, Alderson will

produce any documents which have been withheld based on DVU's claim of privilege. Second, the Commission has requested bank statements for those accounts into which Alderson and Hamilton deposited compensation received from DVU, DVG, and/or Green during the relevant period identified in the Commission's Requests for Production served on Defendants on August 31, 2018. Defendants have objected to production of the same. On May 22, 2019, the Commission conferred with Defendants and proposed two options: (1) the parties could stipulate that certain reports (the "Compensation Summaries") produced by DVU accurately reflect compensation paid to Defendants or (2) Defendants could produce the requested bank statements in redacted form. Defendants advised that they would review the Compensation Summaries produced by DVU and revert to the Commission, but Defendants continue to object to producing their bank statements. Should Defendants decline both options presented by the Commission, the Commission will proceed under Your Honor's rules governing discovery disputes.

11. On May 23, 2019, immediately following the conference, the Commission subpoenaed the documents underlying the Compensation Summaries. On July 12, 2019, DVU responded that deVere & Partners Holding Limited (Malta) created the Compensation Summaries. Thereafter, DVG's counsel informed the Commission that DVG would produce the documents used to create the Compensation Summaries. DVG, while refusing service or agreeing to produce documents demanded by the Defendants, produced certain documents used to create the Compensation Summaries and the Commission produced these documents to Defendants on October 2, 2019 with a request that they inform the Commission by October 10, 2019 as to whether they would stipulate that documents produced by DVG accurately reflected compensation paid to Defendants. On October 28, 2019, counsel for Alderson requested a draft copy of a proposed stipulation to discuss with his client. In response, the Commission suggested

5

a meet and confer at the conclusion of Mr. Byrne's October 30, 2019 deposition. Unfortunately, due to the lateness of the first day of Mr. Byrne's deposition concluding that meet and confer did not occur. The Defendants are prepared to meet and confer with the Commission to resolve the issue referenced in paragraph 11. However, Defendants also state that the documents produced by DVG are not underlying or contemporaneous business records from which the accuracy of the purported Compensation Summaries can be determined but are spreadsheets apparently created for litigation and accordingly Defendants cannot ascertain the accuracy of the Compensation Summaries from them; that DVG has access to those underlying records which otherwise would have to be obtained from banks in the UK; and accordingly DVG should be compelled to produce them. In addition, the purported Compensation Summaries and even the spreadsheets do not include deductions from the amounts identified for payments to others working on the specific accounts. The Commission disagrees with Defendants' characterization of the Compensation Summaries and underlying documents produced by DVG, but will meet and confer with Defendants on this issue.

12. The Commission's position remains that bank statements for accounts into which defendants deposited compensation received from DVU, DVG, and/or Green are directly relevant to the Commission's claims that defendants violated the Investment Advisers Act of 1940 ("Advisers Act") by misrepresenting and omitting material information regarding their compensation and are relevant to defendants' denials of certain allegations relating to undisclosed compensation received. Further, the Commission maintains that its request is not overbroad in that the Commission is seeking evidence from a defined relevant time period and is seeking redacted statements for only those accounts into which the relevant compensation was deposited. It is the Defendants' position that the Commission's subpoena to DVU, and

documents already provided by DVU to the Commission and the documents to be provided by DVG, make the Commission's demand for Defendants' bank records unnecessary, unduly burdensome and premature.  Defendants also contend that the Commission's requests for their bank records are objectionable in that, among other things, they are overbroad, they seek confidential and highly private information, and documents which are neither relevant nor likely to lead to admissible evidence.  Moreover, Defendants themselves will need to obtain the records from their respective Banks and will then first have to redact them all of which will be expensive and time consuming.  Defendants will also need to review the very same documents the Commission has subpoenaed from DVU and produced by DVG to respond to the Commission inquiries concerning the compensation and accordingly are awaiting the production from DVU or DVG as referenced above.  Defendants also contend, that the Commission does not need such bank statements to show materiality or violation of the Advisers Act, that such information is premature since no liability has been established and would only be relevant, if at all, to the assessment of damages, if any, and such disclosure if at all should be limited to those entries which show receipt of compensation from DVU.

13. The Commission has taken five depositions and has scheduled for November the depositions of three former DVU employees.  The Commission has repeatedly requested counsel for Defendants to provide dates for Defendants' depositions, both via email and in person, but has received no response. The Commission has, therefore, subpoenaed the depositions of Bradley Hamilton for December 9, 2019 and Benjamin Alderson for December 12, 2019. The parties have agreed that the Commission will take Defendants' depositions near the end of fact discovery. Defendants agree that the parties reached agreement that their depositions would proceed at the end of fact discovery. But Plaintiff's subpoena (and its request to set a date) are

premature in that there are still numerous other depositions that have not yet been taken. The parties are working diligently, ten depositions have been completed to date including three depositions sessions which proceeded in the last 10 days, two more are scheduled, and nine other deposition days –not including the defendants – are being scheduled or are outstanding.

14. Alderson has served subpoenas on Carlton Fields, DVU's outside counsel, DVU, Martin Byrne, and Kumar Patel and has attempted service on DVG, Nigel Green, Beverly Yeomans, and deVere & Partners. Carlton Fields and DVU served responses and objections, to all but one more recent supplemental subpoena. Alderson reserves his right to challenge the completeness of that production. Mr. Patel has produced documents in response to the subpoena served upon him. Based on the recent testimony of Market Counsel attorney Meredith Abrams on October 21, 2019 and DVU and DVG former counsel Martin Byrne on October 30, 2019, Defendants believe (1) that DVU has waived any privilege related to the question of whether DVU should have been registered as a broker dealer and that previously withheld documents and redacted sections of produced documents must be produced; and (2) that additional identifiable relevant documents exist and should be in the possession of Byrne, DVU, DVG or Market Counsel which have not been produced, including but not limited to the initial fee disclosure forms prepared by Martin Byrne and advisors provided to Market Counsel, communications between Byrne and Green, DVG training materials, and DVG internal reports on the set-up of the DVU office and business, among others. Mr. Byrne's possession of additional documents was noted in a letter submitted on his behalf to the Court on October 30, 2019, the morning of his deposition. The Commission's position is that the issue of whether DVU should have been registered as a broker dealer is not relevant to the parties' claims or defenses. The Defendants believe it is relevant as the focus of DVU's general counsel was on this issue which Defendants

contend directly impacted advice given as to fee and conflict disclosure. Furthermore, Defendant Alderson will testify that conversations which Martin Byrne testified were related to disclosure of fees and conflicts were in fact about potential broker dealer registration. Hamilton also issued a subpoena to DVU dated December 18, 2018. DVU did not make any production, and objected to most of the requests contained therein by letter dated January 15, 2019. Hamilton reserved his rights to compel production. A conference to address this issue was held on April 9, 2018. Thereafter, the Court issued a ruling in which it found that the disputes concerning Request Nos. 1, 2, 3, 5 8-9, 13-16 and 19 were not yet ripe for adjudication, directed DVU to provide engagement letters with respect to Request Nos. 10 and 11 and directed DVU to produce documents responsive to Request Nos. 4, 6, 7 and 12, but declined to order production of documents responsive to Request Nos. 17 and 18.

15. Hamilton has served subpoenas on the following former or current DVU employees: Andoni Yturralde, Martin Byrne, Bennett Linsky, Eric DiAndrea, and Kevin McNee and former DVU clients Tim Wilks and Norman Scott in addition to the Requests for International Judicial Assistance for the depositions of Beverly Yeomans and Nigel Green discussed below. The deposition of Eric DiAndrea was completed on March 25, 2019 and the deposition of Bennett Linsky was completed on May 8, 2019. The deposition of Kevin McNee occurred on August 7, 2019. s Martin Byrne's deposition was taken on October 30 but was not completed. The Yturralde deposition was adjourned pending production of additional relevant documents by DVU, as discussed below. The deposition of Tim Wilks and the Norman Scott have not been scheduled and Defendants are considering withdrawing those subpoenas. The deposition of Kumar Patel was taken by the SEC on July 19, 2019, and was continued on October 23, 2019 after it was adjourned at the conclusion of the SEC's direct examination.

Defendants have been seeking to complete depositions of former and current DVU employees and vendors before proceeding with depositions of DVU clients to assure that such depositions are necessary. Defendant Hamilton reserves his right to also serve a Rule 30(b)(6) notice on the Plaintiff. To the extent that Hamilton issues a notice for a Rule 30(b)(6) deposition to the Commission and endeavors to depose Commission staff, the Commission will promptly proceed under Your Honor's Individual Practices in Civil Cases concerning discovery disputes, as the Commission believes there is no basis for such a deposition.

16.     Defendants Hamilton and Alderson have served the Office of the Attorney General of the Republic of Malta of Requests for International Judicial Assistance Pursuant to the Hague Convention, signed by this Court on March 18, 2019 with a seal affixed by the Clerk on March 29, 2019, requiring the production of documents by deVere Group Ltd. and deVere & Partners Ltd. pursuant thereto, and the scheduling of Beverly Yeomans and Nigel Green's depositions in Malta, or such other location upon which they may agree. The service was effectuated with the cooperation of the Commission. Prior to sending those documents out for service Defendant Alderson's counsel requested that Carlton Fields accept service or attempt to make arrangements for service to be accepted to avoid the need to proceed through the Office of the Attorney General of the Republic of Malta ("Malta OAG"). Carlton Fields stated they could not accept or arrange for service. Defendant Alderson's counsel has additionally placed a call to Pryor Cashman to determine if, in light of the issuance by the Court, it is now in a position to accept service on behalf of any of these non-parties. Pryor Cashman had previously rejected Alderson's counsel's requests to assist with service of discovery for Nigel Green and DVG. Pryor Cashman did not return calls from Alderson's counsel. Although Defendants have requested this discovery, the Commission has been in direct contact with a representative of the

Malta OAG in an effort to move discovery along. On July 8, 2019 the Malta OAG representative confirmed to the Commission receipt of Defendants' Requests for International Judicial Assistance and indicated that the Courts of Malta have appointed a judicial referee to collect the requested evidence.  The Commission contacted the Malta OAG on several occasions since July 8, 2019 to attempt to obtain an updated status as to the Defendants' Requests for International Judicial Assistance.  On August 20, 2019, a Malta OAG representative indicated that the judicial referee would be holding a sitting on September 24, 2019 at 11 a.m. local time in Malta.  The Commission requested further details from the Malta OAG representative, including with respect to what a "sitting" entails.  The Commission continued to follow up with the Malta OAG to attempt to obtain additional information.  Thereafter, the Malta OAG indicated that the September 24, 2019 sitting was not held due to a refusal by DVG to be served with a summons and the fact that Nigel Green and Beverley Yeomans have not been served with a summons.  The Commission informed Defendants of this on September 25, 2019. The Malta OAG further indicated that the judicial referee intends to inform the Maltese court of the status and to seek direction as to how to proceed. Several months ago, Defendant Hamilton requested contact information from the Commission for the Malta OAG representative. The Defendants state that the Commission declined to do so without the permission of the Malta OAG, which the Commission contends is its usual practice when dealing with foreign regulators. The Commission also contends that it has requested permission to share such contact information but the Malta OAG has not responded to the Commission's request.  The Commission further states that it provided Defendant Hamilton's counsel's contact information to the Malta OAG. Defendants contend that there is no basis for the Commission to withhold the contact information of the Malta OAG in that this is not a matter of two regulatory agencies conferring on regulatory

matters but is a litigated matter. The Commission has recently provided to Defendants all requested contact information and Defendants have reached out directly to the Malta OAG. As a result of the Malta OAG's report to the Commission, after obtaining permission from the Court, Defendant Alderson has moved for an order permitting substituted service upon DVG, Green and Yeomans through the Pryor Cashman firm. That motion, in which Defendant Hamilton will join, is pending and Pryor Cashman has indicated it will oppose that motion.

17. Prior to filing that motion, Defendant Alderson served subpoenas on the various at issue non-parties through Pryor Cashman on October 17, 2019, mistakenly believing that the Court had granted it application for substitute service at the October 16, 2019 conference. Thereafter, counsel for DVG objected to the service and stated the Court had only granted leave to make the application. After obtaining a copy of the transcript and determining that DVG's counsel was correct at to the Court's direction, counsel for Alderson informed DVG's counsel that it would be making the application. Pryor Cashman further informed Alderson's counsel that it no longer represented Nigel Green in a personal capacity and never represented Ms. Yeomans in a personal capacity.  In response, Alderson's counsel asked when its representation of Green terminated and for what period it did represent him. Pryor Cashman ultimately responded that as Alderson had filed its application for alternate service, as Pryor Cashman instructed it to do in response to being served the subpoenas, it would not answer and questions or meet and confer. Pryor Cashman has stated in never represented Yeomans in her personal capacity; however, Alderson's counsel does not believe alternate service of corporate officers through corporate counsel is impermissible. Communications are ongoing at time of filing.

18. Due to the requests for International Judicial Assistance in Malta and other outstanding discovery, as discussed above, the parties requested and the Court extended fact

discovery to December 13, 2019 and other deadlines accordingly. Defendants' believe a further extension is necessary as a result of DVG's refusal to accept service in Malta and DVU's continued failure to cooperate with document production and its improper privilege assertions and purported selective privilege "waiver" using the selective privilege to benefit DVU. The Defendants requested that DVU produce all communications related to DVU internal decision on whether it was to be registered as a broker dealer and believe that any related privilege has already been waived. DVU's counsel has indicated it is considering that request. Considering the outstanding privilege issue which only fully arose with DVU's partial waiver and production on October 7, 2019, and the still outstanding discovery sought from DVG and its executives, the Defendants do not believe discovery will be completed by December 13, 2019, and believe a sixty-day extension of discovery is reasonable under the circumstances. The Defendants are mindful of the Court's directive at the last conference to meet and confer with the at issue non-parties to attempt to resolve discovery disputes before seeking Court intervention; however, with less than 45 days remaining in discovery, Defendants are being put in a difficult situation when counsel for DVU, DVG, and Byrne do not promptly respond to email communications or are unavailable for several days to before a call can be scheduled.

19.     Given the Commission's view of the progress of fact discovery, the Commission continues to see no basis for any additional fact discovery extension at this time, and would likely oppose any motion by defendants requesting an extension beyond December 13, 2019. Defendants disagree because it is they and not the SEC which has been prejudiced by DVU's selective waiver, refusal to produce and the delay of key depositions and document production here and in Malta.

20. The Commission disagrees that Defendants are prejudiced. Defendants first raised their need to seek evidence via letters rogatory in the initial pretrial conference with the Court on July 20, 2018, but did not ask the Court to issue letters of request to the Central Authority of the Republic of Malta until February 15, 2019. As early as July 8, 2019, the Courts of Malta appointed a judicial referee to collect evidence pursuant to Defendants' Requests for International Judicial Assistance, however no evidence has been collected from DVG, Nigel Green or Beverley Yeomans in Malta, as it appears they have not been served. Therefore, it is unclear whether any evidence can be obtained from Malta. Further, the Commission believes that the less than 45 days that are remaining before the fact discovery deadline provides ample time for Defendants to resolve their disputes with DVU, DVG and Byrne regarding the privilege waiver.

21. The Defendants disagree with the statements made in the last paragraph. As previously noted the Commission undertook to effectuate service on the Malta OAG and has been the only party in direct contact with the Malta OAG. Defendants did not learn there was any issue with service either on the Malta OAG or by the Malta OAG on DVG, Green and Yeomans until so informed by the Commission on September 25 and have since promptly sought Court intervention to obtain that discovery. The Commission has now for the first time apparently decided that it is better off without the DVG, Green and Yeomans documents and testimony. But that is not a reason for Defendants to be prejudiced by this sudden development and change of tactics by the Commission.

22. The Commission disagrees with Paragraph 21. The second sentence that the Commission "undertook to effectuate service on the Malta OAG" is inaccurate. Defendant Alderson and Hamilton sought discovery from Malta and the Commission, as a courtesy,

14

provided them with the address of a contact at the Malta OAG. The Commission also states that the third sentence is misleading and Paragraph 16 presents an accurate chronology of events, which show there was not delay in informing Defendants of the developments in Malta. The Commission claims the fourth and fifth sentences are misleading because it is the Defendants, and not the Commission, that seek discovery from Malta and there have been no "sudden developments" or "changes in tactics." Defendants disagree with these statements by the Commission.

23.     In accordance with FRCP 26(e), on February 7, 2019, April 2, 2019, April 24, 2019 and May 21, 2019, the Commission supplemented its August 8, 2018 Initial Disclosures by identifying additional individuals with information that the Commission may use to support its claims.  The Commission has thus far identified over 30 individuals with information the Commission may use to support its claims (including 19 individuals on August 8, 2018, 8 individuals on February 7, 2019, 4 individuals on April 2, 2019, 2 individuals on April 24, 2019 and 1 individual on May 21, 2019).  Defendant Hamilton states that he has repeatedly requested that the Commission identify which of the 30 are likely to be witnesses at trial so that he does not have to waste time and money on unnecessary depositions and so that the potential trial witnesses can be deposed and has reserved his rights accordingly.  The Commission has informed counsel for Defendant Hamilton that it reviewed its initial and supplemental disclosures in good faith, intends to rely on information from all individuals disclosed to support its claims at trial, has no obligation to serve a trial witness list during fact discovery, and will stipulate to additional depositions during fact discovery should Defendant Hamilton exceed the ten depositions allotted in the FRCP.  On December 21, 2018, January 10, 2019, February 11, 2019, February 15, 2019, March 18, 2019, April 11, 2019, June 10, 2019, July 15, 2019,

September 11, 2019, October 2, 2019 and October 20, 2019 the Commission shared with Defendants productions received during discovery from third parties pursuant to Rule 45 subpoenas issued by the Commission or voluntarily.  Similarly, on March 15, 2019 and May 7, 2019, Hamilton shared with the Commission documents received pursuant to Rule 45 subpoenas issued by Hamilton.  The Defendants reserve their rights to seek further discovery in light of the supplemental disclosures and productions from Plaintiff.

24.     In Alderson's Initial Disclosures dated August 8, 2018, he identified the following categories of individuals likely to have discoverable information pursuant to FRCP 26(a): "Clients of Ben Alderson," "Additional current and former management and executives of deVere USA and deVere Group Ltd.," and "Additional compliance and legal counsel to deVere Group Ltd. and deVere USA."  In Hamilton's Initial Disclosures dated August 8, 2018, he identified the following categories of individuals likely to have discoverable information pursuant to FRCP 26(a): "Various clients of DVU and DVG to be identified" and "Various employees of DVU and DVG to be identified."  On August 31, 2018, the Commission served discovery requests on Defendants seeking specific identification of individuals they may rely on to support their defenses.  The Commission states that beginning on October 9, 2018 and continuing to as recently as July 3, 2019, the Commission has asked Defendants to specifically identify such persons so that the Commission may seek discovery, including if necessary depositions, from these individuals.  On July 11, 2019, Defendant Hamilton supplemented his disclosures and identified individuals with information he intends to use to support his defense. On June 14, 2019, Defendant Alderson's counsel indicated that Defendant Alderson would be adding Zachary Zanghi and Adrian Flambard as individuals with information he intends to use to support his defense, and that he may also add certain clients or prospective clients.  Defendant

Alderson indicated on September 3, 2019 that he would supplement that disclosure with the names of clients or prospective clients with information he intends to use to support his defense in the coming days.  To date however, Defendant Alderson has not named any clients or prospective clients with information he intends to use to support his defense. Defendants have reserved their rights to supplement their initial disclosures if and when they identify additional specific individuals.

25. On September 10, 2019, DVU's counsel sent a letter to the parties stating in part that DVU "will waive its attorney-client privilege with respect to email or other communications between Martin Byrne and DVU Personnel concerning the disclosure obligations of DVU and DVU Personnel under federal securities laws and regulations, but only with respect to the following two narrow subjects: (1) the '7% Upfront Commission' as defined in the SEC's Complaint filed on June 4, 2018 in the Enforcement Action (the 'Complaint'); and (2) the 'IRS Chief Counsel Letter' as defined in the Complaint . . ."  Thereafter, DVU's counsel indicated that in accordance with its September 10, 2019 letter, DVU would be producing documents to the parties on or before September 24, 2019.  As a result, counsel for Mr. Yturralde and Mr. Byrne stated that their clients would not appear for their scheduled depositions, despite Defendants' objections.  The parties took the first day of Martin Byrne's deposition on October 30, 2019 and are endeavoring to schedule a second day.  Mr. Yturralde's deposition is to be rescheduled.  On October 7, 2019, DVU's counsel sent a letter to the parties stating in part that DVU would waive attorney-client privilege with respect to email or other communications between Martin Byrne and DVU personnel with respect to four subjects.  DVU also produced 249 documents in connection with this letter.  Defendants' counsel advised DVU's counsel that they objected to DVU's selective waiver and DVU's unilateral and improper assertion of the scope of the waiver

and sought to have a phone call with all parties and DVU's counsel to discuss the issue. DVU's counsel refused to appear on a call to discuss the issue with the Defendants' counsel prior to DVU making its production.

26. Counsel for Mr. Byrne, DVU's general counsel, did agree to a phone call to discuss his deposition and the selective waiver issue, with that call occurring on September 19, 2019. Mr. Byrne's counsel stated that DVU was determining all waiver issues and that Mr. Byrne personally was not withholding any documents. Mr. Byrne's counsel further indicated that it was their position that Mr. Byrne was not obligated to produce any documents which he believed belonged to DVG, whether or not those documents be in his possession, as DVG had not been successfully served in Malta. At the conclusion of the call, counsel for Alderson sent Mr. Byrne's counsel the following three questions: (1) Was a full search done of Martin Byrne's personal email, text messages and any other paper or electronic communications in his possession, custody or control? (2) Is Martin Byrne in the possession of any documents that he is withholding on the grounds that you do not believe that a proper subpoena has been issued to the deVere Group (or any other deVere affiliated entity)? (3) Is counsel aware of any documents being withheld by Martin Byrne on any basis other than the assertion of the attorney-client or work-product privilege by deVere USA/ Brite? In response, Mr. Byrne's counsel would only state that "in connection with subpoenas served on the company, company counsel conducted a search of all materials in Mr. Byrne's possession, custody or control that may be responsive to the subpoenas" but that any other question would need to be addressed at deposition.

27. On September 23, 2019, counsel for deVere indicated that what it anticipated would be less than 100 documents withheld as privileged would now be produced on or before October 7, 2019. As noted above, DVU made a document production in connection with its

October 7, 2019 letter. Counsel for Defendants anticipate that additional Court conferences or motion practice will be necessary to address the various discovery issues with DVU, DVG, and Byrne, and the extension of the discovery cut-off..

28. The Defendants have reserved their rights to obtain additional documents withheld on the basis of privilege because of DVU's waiver or to continue depositions where necessary based upon the issues in the case, the documents produced, the testimony of the witnesses, and any other relevant factors.

Dated: November 1, 2019                         SECURITIES & EXCHANGE COMMISSION

By: */s/ Michael C. Ellis*___
Haimavathi V. Marlier
Michael C. Ellis
Dugan Bliss
200 Vesey Street, Suite 400
New York, NY 10281
(212) 336-1055 (Marlier)
marlierh@sec.gov
ellism@sec.gov
blissd@sec.gov

Dated: November 1, 2019                         HARRIS ST. LAURENT LLP

By: */s/ Evan Bolla*_____
Jonathan Harris
Yonaton Aronoff
Evan Bolla
40 Wall Street, 53rd Floor
New York, NY 10005
(212) 397-3370
jon@sc-harris.com
yaronoff@sc-harris.com
ewbolla@sc-harris.com
ckamin@sc-harris.com

*Counsel for Benjamin Alderson*

Dated:  November 1, 2019                         KAPLAN LANDAU PLLC

                                                 By: */s/ Mark Landau*
                                                 Mark Landau
                                                 Amanda Grannis
                                                 Carnegie Hall Tower
                                                 152 W. 57th Street, 8th Floor
                                                 (212) 593-1700
                                                 mlandau@kaplanlandau.com
                                                 agrannis@kaplanlandau.com

                                                 *Counsel for Bradley Hamilton*